UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DAWSON WINTER, III, p/k/a "JOHNNY WINTER," <br>         Plaintiff, <br><br> against <br><br> JOHN J. JOHNSTON, III, as Executor of THE ESTATE OF THEODORE PAUL SLATUS, <br>         Defendant. | Civil Action No. <br><br> **COMPLAINT** |

By and through this Complaint, plaintiff Johnny Winter seeks redress against defendant John J. Johnston, III, in his capacity as the Executor of the Estate of Theodore Paul Slatus. In support of his claims herein, plaintiff alleges and avers as follows:

## PARTIES

1. Plaintiff John Dawson Winter, III, who is professionally known as "Johnny Winter" ("Winter"), is an individual who resides in Easton, Connecticut.

2. Defendant John J. Johnston, III ("Johnston" or the "Executor") is the duly appointed Executor of the Estate of Theodore Paul Slatus ("Slatus"), having been appointed to that position by the Probate Court for the District of Colchester, CT. As such in his fiduciary capacity he is a resident of Colchester, CT.

3. Apart from his fiduciary capacity Johnston is an individual who, upon information and belief, resides at Route 1, Box 74, Marion, Alabama 36756. Johnston is also the brother of the late Betty Ann Posidento, who was Slatus's wife and pre-deceased him.

4. Slatus died on November 3, 2005, while a resident of the town of Colchester, Connecticut, within the Probate District of Colchester. Slatus left a will in which he named

Johnston as Executor of his estate (the "Estate"), which was duly proved and allowed by the Probate Court of Colchester. Johnston has qualified as such Executor and is now acting in that capacity.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action, exclusive of the courts of the states, pursuant to 28 U.S.C. § 1338(a), in that it is an action arising under an Act of Congress relating to copyrights.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

7. Winter is a legendary blues guitarist, who has recorded dozens of albums and toured extensively, both in this country and abroad.

8. Commencing in or about 1980, Slatus served as Winter's personal manager in all aspects of Winter's career.

9. Winter terminated Slatus in 2005.

10. While acting as Winter's manager, Slatus was involved in, and exercised nearly exclusive control over almost every aspect of Winter's career, including, inter alia, in making arrangements for the recording and sale of sound recordings featuring Winter's performances; in arranging for Winter's participation in concert tours and his appearance at other live performance events; and in making arrangements for the recording and sale of videos and DVDs featuring Mr. Winter's live performances.

11. During the period in which Slatus served as Winter's personal manager, Slatus also controlled virtually all aspects of Winter's finances and of the joint finances of Winter and his spouse.

12. Pursuant to Winter's agreement with Slatus, Slatus was required to obtain Winter's consent in respect of material matters affecting Winter's career including, without limitation, the release and distribution of sound recordings and DVDs featuring Winter's performances.

13. As Winter's manager, Slatus was to receive a twenty percent (20%) commission on income earned and actually received by Winter from his activities in the entertainment industry.

Slatus's Breaches, Defalcations and Mismanagement.

14. Unbeknownst to Winter, during Slatus's tenure as Winter's personal manager and financial fiduciary, Slatus's conduct was epitomized by dishonesty, self-dealing, incompetence, misappropriation and diversion of funds, fraud, breaches of contractual and fiduciary duties and related defalcations.

15. Slatus's breaches, defalcations and incompetence in managing Winter's career are the subject of a pending action in the Superior Court of the County of Connecticut, entitled Winter v. Johnston, Case No. KNL CV-07-4006798-S (the "Superior Court Action"), which Winter commenced against defendant on or about December 15, 2006.

16. Slatus's breaches of contractual and fiduciary duties included, without limitation, Slatus's role in arranging for the sale and distribution of certain sound recordings and DVDs featuring Winter's performances without Winter's knowledge or authorization, in violation of the agreement between Winter and Slatus, and Slatus's diversion to his own benefit of a substantial amount (if not all) of the income generated thereby.

ME1 6619072v.2

17. In this regard, Slatus advised Winter that a live performance of Winter at B.B. King's Blues Club in Times Square had been recorded and could be released as a DVD (the "Live in Times Square DVD").

18. Winter reviewed the "footage" of this performance and, dissatisfied with the filming and sound quality thereof, advised Slatus that Slatus was not authorized to release the Live in Times Square DVD.

19. Notwithstanding Winter's express directive, Slatus surreptitiously arranged for the manufacture and release of thousands of units of the Live in Times Square DVD, diverting to his own benefit the income generated thereby.

20. In addition to the foregoing, and by way of further example, Slatus arranged for the production, manufacture and distribution of a DVD entitled "Pieces & Bits" featuring certain of Winter's live performances. Slatus represented to Winter that Winter would receive all income generated from the sale of this DVD, less only the expenses incurred in connection with the production, manufacture and distribution of the DVD and Slatus's management commission.

21. Notwithstanding these representations, unbeknownst to Winter, Slatus formed a limited liability company with a certain third party, with whom Winter was not acquainted, which served as the vehicle for the distribution of the Pieces & Bits DVD and for the receipt of the related income. Through this undisclosed company, Slatus diverted to his own benefit (and the benefit of his undisclosed "partner" in the venture) the income generated from the Pieces & Bits DVD.

<u>The Sound Recordings At Issue.</u>

22. At the time of Slatus's death, he had in his possession numerous articles of personal property belonging to Winter, including numerous tapes and/or other media (the "Tapes") containing recordings of musical performances by Winter (the "Sound Recordings").

23. The Sound Recordings depict performances of Winter with other musicians, including certain well-known artists such as Muddy Waters, and, on information and belief, may depict certain solo performances of Winter.

24. Slatus does not appear on the Sound Recordings and provided no original contribution to their creation or production.

25. Winter did not grant or assign to Slatus or his estate any interest in the Sound Recordings or the copyrights therein.

26. On information and belief, no other artist depicted on the Sound Recordings granted or assigned to Slatus or his estate any interest in the Sound Recordings or the copyrights therein.

<u>Winter's Demands for Return of the Tapes and Preservation of the Sound Recordings.</u>

27. In the Superior Court Action, Winter has demanded the return of his personal property in the possession of Slatus at his death, including the Tapes. To date, defendant, acting as the executor of Mr. Slatus's estate, has not returned the Tapes to Winter or afforded Winter or his representatives an opportunity to inspect the Tapes, despite the fact that they belong to Winter.

28. In the Superior Court Action, Winter also seeks confirmation that, until the Tapes are returned to Winter as rightful owner thereof, the Estate will maintain the Tapes in an environment conducive to their continued integrity and preservation. Defendant has failed to provide sufficient assurances of the same to Winter.

ME1 6619072v.2

29. On or about March 27, 2007, Winter's representatives reviewed certain documents in the possession of an attorney who has, at various times, represented Winter, Slatus and the Estate. During the course of this review, Winter's representatives noticed a comprehensive written inventory of the Tapes, consisting of photographs of the Tapes and their labels, as well as information concerning the artists appearing, and the songs performed, on each Tape (the "Inventory").

30. Winter's representatives requested a copy of the Inventory from the Estate. In response, defendant's counsel refused to allow Winter's representative to further examine the Inventory and thereafter refused to provide a copy thereof to Winter. Despite further demand, defendant has continued to purposefully withhold the Inventory from Winter.

31. In the Superior Court Action, Winter asserts, inter alia, a claim under state law seeking the return and replevin of his personal property held by the Estate, including the Tapes. The Superior Court Action does not seek relief concerning the Sound Recordings or the copyrights therein.

32. As of the present date, the Tapes have not been returned to Winter and there has been no decision by the Superior Court concerning the ownership or possession of the Tapes.

33. In contrast to the Superior Court Action, this action does not seek relief with respect to the ownership or possession of the physical Tapes. Rather, through this action, Winter seeks relief under the United States Copyright Act with respect to the Sound Recordings embodied on the Tapes.

## COUNT I
### (Declaratory Judgment)

34. Winter incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint, as if fully stated herein.

ME1 6619072v.2

35. Winter asserts and avers that, pursuant to the United States Copyright Act, and by virtue of his status as author or co-author of the recorded performances embodied in the Sound Recordings, he is the owner or co-owner of each of the copyrights in those Sound Recordings.

36. Winter asserts and avers that the Estate does not possess a copyright (or other ownership) interest in the Sound Recordings embodied on the Tapes.

37. On information and belief, defendant disputes and denies Winter's asserted positions as aforesaid.

38. As a result, a justiciable controversy exists concerning Winter's ownership or co-ownership of the copyrights in the Sound Recordings contained on the Tapes.

39. Pursuant to 28 U.S.C. §2201, Winter requests a judicial declaration (1) that, pursuant to 17 U.S.C. § 201(a) and all other applicable provisions of the United States copyright laws, Winter is an owner or co-owner, as the case may be, of the copyrights in each of the Sound Recordings; and (2) that neither defendant nor the Estate possesses any ownership or other interest in the Sound Recordings or the copyrights therein.

## COUNT II
### (Injunctive Relief)

40. Winter incorporates herein by reference in their entirety the allegations set forth in the preceding paragraphs of this Complaint, as if fully stated herein.

41. As set forth above, both the Tapes and the Sound Recordings embodied thereon are presently in the possession of the Estate. The Tapes remain in the possession of the Estate, and Winter has not been afforded access to the Sound Recordings.

42. Winter is the rightful owner of the Tapes and the rightful owner or co-owner of the copyrights in the Sound Recordings.

43. Winter has not authorized defendant or the Estate to reproduce, perform, broadcast, sell, license, distribute or otherwise exploit, or take any other actions in respect of the Sound Recordings.

44. As alleged earlier herein, Slatus, on numerous occasions, surreptitiously arranged for the exploitation and distribution of sound recordings embodying Winter's recorded performances without Winter's knowledge, consent or authorization.

45. Winter requires access to the Sound Recordings in order to exercise his rights as an owner or co-owner of the copyrights in the Sound Recordings, including the right to copy or reproduce the Sound Recordings, license the copyrights in the Sound Recordings and distribute copies for sale or otherwise exploit the same.

46. In addition, the Sound Recordings are unique and irreplaceable and, while the Tapes are in the possession of the Estate, there is a substantial risk that they will not be maintained in an environment conducive to the preservation of their physical integrity and the quality of the Sound Recordings.

47. To date, Winter has not been permitted by the Estate to inspect the Tapes or received adequate assurances from the Estate that the Tapes are being maintained in an appropriate environment for the preservation of the integrity of the Sound Recordings.

48. While the Tapes are in the possession of the Estate, there is a substantial risk that defendant will copy, reproduce, perform, broadcast, sell, license or otherwise exploit those Sound Recordings without authorization, thus infringing on Winter's rights as owner or co-owner of the copyrights therein.

49. In light of the foregoing, Winter requests that the Court issue an injunction:

8

a.  granting Winter, or his agents or representatives, access to the Sound Recordings so that he may playback, broadcast, reproduce, sell, license, distribute or otherwise exploit the Sound Recordings pursuant to his rights as an owner or co-owner of the copyrights therein;

b.  restraining defendant and the Estate from copying, reproducing, performing, broadcasting, selling, licensing, distributing or otherwise exploiting the Sound Recordings or the copyrights therein; and

c.  ordering defendant to maintain the Tapes in an environment that is conducive to the preservation of their physical integrity and the quality of the Sound Recordings.

ME1 6619072v.2

## PRAYERS FOR RELIEF

WHEREFORE, based upon the foregoing allegations and averments, plaintiff John Dawson Winter, III, p/k/a Johnny Winter, respectfully requests that this Court grant the following relief:

A. That it enter judgment in favor of Winter and against defendant on Count I of this Complaint and, in connection therewith, that it enter a judicial declaration that Winter is the owner or co-owner, as the case may be, of the copyrights in the Sound Recordings, and is invested with all rights under the United State Copyright Act, and other applicable law, appurtenant to that status;

B. That it enter judgment in favor of Winter and against defendant on Count II of this Complaint and, in connection therewith, that it enter an injunction:

    i. requiring defendant and the Estate to grant Winter, or his agents or representatives, access to the Sound Recordings so that Winter may playback, broadcast, reproduce, sell, distribute or otherwise exploit the Sound Recordings pursuant to his rights as an owner or co-owner of the copyrights therein;

    ii. restraining defendant and the Estate from reproducing, performing, broadcasting, selling, licensing, distributing or otherwise exploiting the Sound Recordings or the copyrights therein; and

    iii. ordering defendant and the Estate to maintain the Tapes in an environment that is conducive to the preservation of their physical integrity and the quality of the Sound Recordings.

ME1 6619072v.2

C.  That it enter such other and further relief as it deems just and appropriate in the circumstances.

Dated: August 1, 2007
       Hartford, Connecticut

                              ATTORNEYS FOR PLAINTIFF
                              JOHN DAWSON WINTER, III p/k/a
                              "JOHNNY WINTER"

By: _____
    Timothy S. Fisher (ct 05370)
    *tfisher@mccarter.com*
    Vanessa D. Roberts (ct 21000)
    *vroberts@mccarter.com*
    McCARTER & ENGLISH, LLP
    CityPlace I, 36th Floor
    185 Asylum Street
    Hartford, CT  06103
    Tel (860) 275-6700
    Fax (860) 724-3397

        and

    John J. Rosenberg
    Matthew H. Giger
    Rosenberg & Giger P.C.
    488 Madison Avenue, 10th Floor
    New York, NY  10022
    Tel  (212) 705-4824
    Fax  (212) 593-9175